UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
NIKOLIS BEN CHYAT,

                Plaintiff,

  -against-                    **MEMORANDUM AND ORDER**
                                  15-CV-06496-FB
CAROLYN COLVIN,
Acting Commissioner of Social Security,

                Defendant.
---------------------------------------------------x

*Appearances:*
For the Plaintiff:                      For the Defendant:
PATRICK JAMES BEST                      DARA A. OLDS
Andrews, Riegel & Masington, LLC        United States Attorney's Office
18 N 8th St                             Eastern District of New York
Stroudsburg, PA 18360                   271 Cadman Plaza East
                                        Brooklyn, NY 11201
JULIA IRENE PORPER
Fortunato & Fortunato, LLC
26 Court Street, Suite 1301
Brooklyn, NY 11242

**BLOCK, Senior District Judge:**

      Nikolis Ben Chyat ("Chyat") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under Title II of the Social Security Act. The Commissioner moves for judgment on the pleadings, and Chyat moves for summary judgment. For the

following reasons, the Court grants Chyat's motion insofar as the case is remanded for further proceedings. The Commissioner's motion is denied.

# I

## A. The Injury

On June 13, 2012, Chyat suffered a work-related injury at his construction job. He hit his head against a metal beam, falling and injuring his left knee and back. The facts surrounding the accident are best described in the psychiatric evaluation performed by Joseph Sheris, Ph.D. on April 8, 2013:

> According to the claimant, he was traveling along the dark suspended flooring when he twisted his ankle on some debris that was scattered in the area. As he spun, his foot also became caught on the uneven flooring, and he went face first into a steel I-beam causing a large gash above his left eye. He reports that he blacked out for a time and awoke lying on his back. He recalls coming to with the awareness of "extreme pain" in his knee. He recalled viewing his knee and leg in unnatural position [sic], dislocated when he looked down. He was by himself in this area. He called out for help, but no one was around. He somehow got his knee back in place and eventually crawled to the area where a ladder was located. He managed to get up to the level above where he was discovered by others.
> The claimant recalls "feeling trapped" and "helpless" following the accident while he was still on the suspending flooring. He described yelling for help many times before trying to move. . . . [H]e began to think irrationally. He states, "I was really scared. I thought I was going to die there."

AR 465.[1]

---

[1] AR refers to the Administrative Record.

## B. The Resulting Physical and Psychological Issues

Chyat suffered significant long term impairments, both physically and psychologically, as a result of this accident. Initially, he suffered from lower lumbar pain, knee pain, headaches, and dizziness. On August 20, 2012, Chyat underwent left knee arthoscopy lateral release. In September 2012, MRI scans revealed multilevel cervical disc bulging from C2-C6 with impingement of the thecal sac from C4-C6 and multilevel bulging from L2-L5 with impingement of the thecal sac. Chyat's knee problems continued, and on February 14, 2014, he underwent a left knee arthoscopy, plica resection, open lateral release, and proximal realignment.

Chyat also suffered severe psychological problems. On June 20, he reported dizziness, confusion, and "word finding difficulties" and was diagnosed with post concussion syndrome.[2] AR 405. On February 4, 2013, during a psychological exam at Behavioral Medicine Associates, Chyat stated, "since accident I have to think really hard before I speak. I cannot remember simple things. For example the other day I put my wallet in back pocket then spent the next hour searching my house for wallet. Very antisocial to the point where I won't speak to anyone for days/weeks at a time. I can't talk right when getting upset, I have a stutter. I get very annoyed." AR 431.

Chyat reported long term problems stemming from the stress of the accident.

---

[2] Some doctors refer to this diagnosis as "post concussion syndrome" and others as "post concussive syndrome." For sake of consistency, the Court will use "post concussion syndrome."

From the same psychological exam:

> [Chyat] is reporting symptoms of Post-Traumatic Stress Disorder. He reported repeated disturbing memories, thoughts and images of this incident, nightmares of it, he suddenly acts or feels as if it is happening again. . . . He has lost interest in activities he used to enjoy, feels distant and cut off from other people. He has difficulty sleeping, is irritable, has difficulty concentrating, and is hypervigilant. Mr. Chyat also reports depression, loss of motivation and loss of libido.

AR 432. His symptoms for somatization, depression, and anxiety were all above the 98th percentile in severity. *Id.* Chyat was diagnosed with Post Traumatic Stress Disorder ("PTSD"), a severe major depressive episode, and post concussion syndrome.

On April 8, 2013, Chyat underwent another psychological evaluation conducted by Joseph Sheris, Ph.D. In addition to the symptoms described above, Sheris describes Chyat as suffering from lack of sleep and loss of social interest. Sheris diagnosed Chyat with PTSD and depressive disorder. He concluded that "from a psychological viewpoint, there is currently a partial work related disability (50%). . . . He can return to work on a part time basis situation with minimal stress, as much as his physical nature can tolerate." AR 470. On May 29, 2014, Dr. Sheris conducted a second psychological exam and found Chyat still had twice weekly nightmares, headaches, backpain, lack of sleep, and feelings of isolation. Dr. Sheris reaffirmed his diagnosis that Chyat was 50% disabled.

On three occasions, neurologist Mohammad Aslam, M.D., examined Chyat. On

4

November 12, 2012, Aslam diagnosed Chyat with cerebral concussion, post-concussion syndrome, cervical strain, lumbosacral strain, lumbosacral disc, and injury to the left patella. He diagnosed Chyat as 50% disabled, "primarily due to his headaches that are still significant." AR 563. However, he cleared Chyat to return to work "of moderate nature." *Id.* On March 25, 2013, he diagnosed Chyat with lumbrosacral strian, lumbosacral disc herniation, PTSD, injury to both knees, and post-concussion syndrome. He now diagnosed Chyat as 67% disabled and opined, "[t]he patient cannot return to work for all the above problems, especially his knees, they did not recover. He may not be able to do any type of sedentary work." AR 555. Finally, on June 17, 2014, he diagnosed post concussion syndrome, low back pain syndrome, lumbrosacral disc with lumbosacral radiculopathy, injury to both knees and "status post-surgery left knee." AR 548. He finally held "[a]t this time [Chyat] cannot return to work. Restrictions are total. As I mentioned before he is not capable of any work at this time, including sedentary work. . . . The patient was hurt more than two years ago, so it is possible his symptoms may persist indefinitely or permanently." AR 549.

Chyat also met repeatedly with a pain specialist named Matthew Grimm, M.D. Dr. Grimm opined on at least four occasions – December 17, 2013, January 15, 2014, February 11, 2014, and March 17, 2014 – that Chyat's "temporary impairment" was 100%. AR 44.

Chyat's extensive treatment history also included appointments at NY Ortho Sports Medicine & Trauma, P.C., for pain management, with Nicky Bhatia, M.D., for evaluation of post concussion syndrome, with Eric Crone, D.O., for back pain, with Daveed Frazier, M.D., for back pain, with Howard Rombom, Ph.D., for PTSD, depression, and post concussion syndrome, Uchenna Uzoukwu, M.D., for his psychiatric problems, Richard Small, Ph.D., for a disability follow up, and Alfred Bagamasbad, Psy.D., and Howard M. Romborn, Ph.D., for post-concussion syndrome. *See* AR 42-45; 263; 431–33.

**C.    Hearing Testimony**

At a hearing before the ALJ on July 14, 2014, Chyat testified to the following:

- He was unable to work due to neck, back, and knee pain, lack of sleep, and headaches.
- He could stand for ten minutes before feeling pain.
- He could sit for ten to fifteen minutes before feeling pain and needing to readjust.
- He could walk for fifteen to twenty minutes, sometimes using a cane.
- He had trouble lifting a gallon of milk.
- He could no longer do previous activities, including working out, swimming, running, playing basketball, and shopping.
- He could drive distances up to two hours, but needed to stop two or three times for breaks.
- He is no longer able to read because of troubles with concentration and comprehension.

*See* AR 95-99.

A Vocational Expert ("VE") Nadine Henzes also testified at the hearing. The

VE identified the positions of document preparer, visual inspector, and video monitor as appropriate jobs for a person with the RFC identified by the ALJ. Chyat's attorney questioned the VE about a hypothetical person with the same restrictions, combined with an inability to concentrate for more than thirty minutes out of every hour. AR 113-14. The VE testified that no jobs existed in the national economy for such a person. AR 115.

## II

On January 22, 2013, Chyat filed his application for disability benefits, alleging disability as of June 13, 2012, due to his anxiety, depression, and physical problems with his left eye, head, back, neck, and both knees. Chyat's application was denied.

On July 31, 2014, the ALJ rendered his written decision. The ALJ first made a threshold finding that Chyat last met the insured status requirement of the Social Security Act on September 30, 2012. Applying the familiar five-step evaluation process,[3] the ALJ first determined that Chyat had not engaged in substantial gainful activity between his alleged onset date on June 13, 2012 and his date last insured,

---

[3] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, [] (4) that the claimant is not capable of continuing in his prior type of work, [and] (5) there is not another type of work the claimant can do." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000).

which he referred to as September 30, 2012.[4] Second, the ALJ found that Chyat suffered the following severe impairments: lumbar radiculopathy, cervical radiculopathy, and post concussion syndrome. He also found that claimant began treatment for major depressive disorder, but not until after the expiration of the date last insured. Third, the ALJ considered whether Chyat had an impairment or combination of impairments that met or equaled the requirements of a listed impairment and determined that he did not. Next, the ALJ found that Chyat had the residual functional capacity ("RFC") to perform sedentary work, with the following restrictions:

> [Chyat] can lift and carry 10 pounds occasionally and 2 or 3 pounds frequently. He must avoid all exposure to unprotected heights and moving machinery. He can never climb ropes, ladders or scaffolds but he can occasionally climb ramps and stairs. The claimant must avoid concentrated exposure to extreme cold temperatures, wetness and noise above level three. He needs an alternate sit/stand option every thirty minutes. He can have occasional interaction with the public. The claimant cannot perform work at a fact [sic] production rate pace. He can understand, remember and carry out simple instructions and make simple work-related decisions with few work place changes.

AR 41-42.

Applying that RFC to the remaining steps, the ALJ found that Chyat was unable to perform his past relevant work but could perform other work that exists in significant numbers in the national economy – namely, document preparer, visual

---

[4] However, later in the same opinion, the ALJ twice referred to Chyat's "date last insured" as June 30, 2012. AR 47.

inspector, and video monitor. The ALJ made this Step Five determination on the basis of the VE's testimony.

The Appeals Council subsequently denied Chyat's request for review, rendering final the Commissioner's decision to deny benefits. Chyat sought timely judicial review.

## III

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings must fall. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . .").

Chyat argues that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence because the ALJ improperly substituted his opinion for that of Chyat's doctors. The Court agrees.

**A.     The ALJ Improperly Substituted His Judgment for Trained Medical Professionals**

The ALJ held that Chyat was exaggerating his symptoms. He found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 42. The ALJ first listed the record of treatment that Chyat underwent. However, the ALJ did not analyze the record or explain why he believed it supported a finding that Chyat's symptoms were exaggerated.

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be draw." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). After exhaustive review, the Court finds the record shows that Chyat was suffering acutely from knee and back issues, combined with PTSD, post concussion syndrome, and major depressive disorder, which in combination has resulted in an inability to perform even sedentary work. The Court notes no less than three of Chyat's examining physicians—Drs. Grimm, Sheris, and Aslam, each who met with Chyat multiple times over a period of several years—also found that his symptoms and medical issues were disabling.

The ALJ did not explain how his examination of the same record led to a

different conclusion. Instead, he simply listed the diagnoses with no analysis or reasoning. The ALJ also did not address Chyat's diagnosis of PTSD and gave almost no treatment to his post concussion syndrome. The ALJ found that Chyat "did not complain of or seek treatment for a mental impairment prior to the expiration of the date last insured." AR 40. However, Chyat was first diagnosed with post concussion syndrome on June 20, 2012, prior to the date last insured, so this finding is contrary to the record.

The ALJ considered the findings of two medical professionals in greater detail: Joseph Sheris and Mohammed Aslam, both of whom saw Chyat multiple times and concluded that he was unable to return to full-time work. The ALJ discounted the credibility of both physicians.

Dr. Sheris analyzed Chyat on April 8, 2013 and May 29, 2014 and opined that Chyat had a 50% partial work-related disability and could return to work part-time with minimal stress. The ALJ gave "some weight to the opinion of Dr. Sheris . . ." but "does not agree that the claimant is limited to part-time work since there is nothing to support this opinion." AR 45.

This conclusory statement does nothing to explain how the ALJ came to discredit Dr. Sheris. It does not address the severity of the symptoms diagnosed by Dr. Sheris. Instead, it is a textbook example of an ALJ "arbitrarily substitut[ing] his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75,

11

81 (2d Cir. 1998); *see also McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him.").[5]

The ALJ provides no evidence from the record for his rejection of the medical conclusion of Dr. Sheris, nor does he impeach Dr. Sheris's credibility with the opinion of another doctor. He simply, and impermissibly, concludes that there is "nothing to support" Dr. Sheris's opinion.

The ALJ did little better in his treatment of Dr. Aslam's diagnosis. Dr. Aslam determined that Chyat:

> is still having pain in his knees, even more so. He is still having significant headaches, they are pretty constant. They get worse at night. Sometimes he feels dizzy and light headed. He is complaining of weakness in his lower back, knees, and legs and also has numbness in the left leg. It runs from the lower back into the left leg in the back of the knee. Again it is more on the left side. He claims that it is bilateral and pretty constant.

AR 546. He also found that Chyat:

> has significant limitation in the range of motion in the whole spine . . . There is a lot of paravertebral muscle spasms and trigger point tenderness and marked limitation in the range of motion in both knees . . . Reflexes are absent on both sides with downgoing Babinski toes.

---

[5] Defendant's argument that 20 C.F.R. § 404.1560(c)(2) supercedes *Balsamo* and *McBreyer* misses the mark because this regulation applies to the Step Five analysis, not the initial determination of RFC at issue here.

12

The straight leg raising is painful on both sides at about 65 degrees.

AR 547.

On the basis of these symptoms, Dr. Aslam concluded that Chyat "is not capable of any work at this time, including sedentary work" and further concluded "it is possible his symptoms may persist indefinitely or permanently." AR 549.

The ALJ gave Dr. Aslam's opinion "no weight since it is an overestimate of the claimant's restrictions." AR 45. The ALJ's reasons for rejection were as follows: On March 25, 2013, (1) Chyat told Dr. Aslam that he could drive for an hour before stopping; (2) Dr. Aslam claimed that Chyat's memory, judgment and comprehension were good; and (3) as part of a larger diagnosis of Chyat's symptoms, Dr. Aslam included a section stating Chyat's "physical capabilities are normal. There is no weakness in the upper or lower extremities. His limitations are primarily due to his PTSD and knee injuries," a section which the ALJ found to be self-contradictory. *Id.*

"[A] circumstantial critique by [a] non-physician[], however thorough or responsible, must be overwhelmingly compelling to justify a denial of benefits." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 862 (2d Cir. 1990)). Here, the ALJ simply substituted his own judgment for that of Dr. Aslam as to what Chyat's reported symptoms indicate. These three "inconsistencies," cherry-picked from the

written record of years of diagnostic meetings, are not so "overwhelmingly compelling" as to overcome Dr. Aslam's diagnosis of Chyat's disabilities.

Indeed, it is doubtful whether these minor quibbles are inconsistent with the diagnosis in the first place. The ability to drive for an hour once does not speak to the ability to work a full forty-hour work week. *See Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working."). Dr. Aslam is not a psychiatrist, so his remark that Chyat had good memory, judgment and comprehension is not a medical diagnosis (Dr. Aslam does not question Chyat's diagnoses of PTSD and post-concussion syndrome). And taken in context of the entire report, common sense dictates that Dr. Aslam's description of Chyat's physical capabilities as "normal" refers to his capabilities outside of Chyat's exhaustively discussed head, knee, and back problems, especially since right after describing Chyat's capabilities as "normal," Dr. Aslam talks about Chyat's limitations due to his knee and head trauma.

The ALJ also cited to "[t]he overall record" and "claimant's presentation at the hearing" as reasons to discount Dr. Aslam's testimony. AR 45. However, the ALJ did not explain why the record contradicts Dr. Aslam's testimony, and the ALJ's observations as to Chyat's presentation at the hearing are "entitled to but

limited weight." *Carroll v. Sec'y of Human and Health Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). In *Carroll*, the Second Circuit rejected similar observations, noting that the ALJ's observations, "being that of a lay person" were insufficient to reject medical evidence. *Id.* The Second Circuit opinion further noted that "since only a 40-minute period was involved," it was not inconsistent with a medical determination that the claimant could not do sedentary work. *Id.* Similarly, the ALJ's observations of Chyat at the hearing are insufficient to overcome direct medical evidence.

In summary, the ALJ erred in rejecting the sound medical findings of Drs. Sheris and Aslam based on nothing more than vague reference to "the overall record" and the ALJ's own lay observations and judgment. This is insufficient to discard sound medical testimony. The ALJ provided no other reasons for his conclusion that Chyat was exaggerating his symptoms, nor did he address Chyat's PTSD and post concussion syndrome diagnoses. The Court therefore holds that the ALJ's conclusion as to Chyat's RFC was not based on substantial evidence.

## B.  Date Last Insured

Chyat urges us to remand with instruction to award benefits. However, the Court is concerned about an issue raised by Defendant's Motion for Judgment on the Pleadings – whether Chyat was disabled before his date last insured.[6] The facts

---

[6] The Court rejects Defendant's argument that the ALJ relied in any way on this issue in his decision. The ALJ specifically chose not to rely upon it, stating, "the undersigned notes that

surrounding this issue appear unsettled. There is at least some evidence that Chyat's symptoms worsened with time, as the medical examinations closer to the date last insured are more optimistic than the examinations several years later. For example, on November 13, 2012, Dr. Aslam approved Chyat to return to work. However, neither the parties nor the ALJ squarely address this fact, nor how it affects Chyat's status on his date last insured.

Simply because Chyat's symptoms worsened over time does not compel a finding that he was not disabled prior to his date last insured. The Second Circuit has observed:

> [E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

*Lisa v. Sec'y of Dept. Of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (quoting *Gold v. Sec'y of Health, Educ. and Welfare*, 463 F.2d 38, 41-42 (2d Cir. 1972)).

Similarly here, Chyat may not have had has disability properly diagnosed until after his date last insured, even though it had onset prior to that date. In

---

the claimant did not complain of nor seek treatment for a mental impairment prior to the expiration of the date last insured. However, the undersigned has factored a mental component into the [RFC]." AR 42.

particular, it appears possible from the record that early diagnoses did not appreciate the severity and permanence of his post concussion syndrome symptoms, first diagnosed on June 20, 2012. AR 405. *See Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (holding the district court erred by failing to consider later evidence "strongly suggest[ing] that, during the relevant time period, [claimant's] condition was far more serious than previously thought").

Still, the record before the Court is murky. Neither the parties nor the ALJ squarely address the timing of symptoms. Even the date last insured itself is unclear; the ALJ described it as both June 30, 2012 and September 30, 2012 in his opinion. Given the inconsistent evidence and lack of briefing on this critical question, the Court is unable to decide the question on the record before it.

On remand, the parties and the ALJ are instructed to address this issue. Doing so may require further development of the record, to fully understand the chronological development of Chyat's symptoms. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record"); *see also Bender v. Astrue*, 2010 WL 5175023, at *7 (N.D.N.Y. Nov. 29, 2010) (holding "it [would] likely be necessary to re-contact the treating physicians to obtain retroactive assessments of [p]laintiff's limitations during

17

the relevant time period" because it was unclear from the record if the plaintiff's disability onset date was before or after the date last insured).

IV

Because we remand on the basis that the ALJ did not support his opinion with substantial evidence and improperly substituted his opinion for medical experts, we need not reach Chyat's additional arguments. On remand, the ALJ should pay particular attention to the timing of Chyat's symptoms relative to his date last insured. The Court is also sympathetic to the long delay Chyat has faced in resolving his benefits claim, and, therefore, "think[s] it best that the [ALJ] disposes of this case as expeditiously as possible." *Pollard*, 377 F.3d at 195.

**SO ORDERED.**

                                                   /S/ Frederic Block  
                                                   FREDERIC BLOCK  
                                                   Senior United States District Judge

Brooklyn, New York  
September 28, 2017